## In re GOWDY.

No. 24370. Oct. 2, 1934.

Rehearing Denied Oct. 23, 1934.

Warren T. Spies, E. R. Jones, and George C. Abernathy, for the State Bar of Oklahoma.

Estes & Gowdy, for respondent.

WELCH, J. In this matter the Board of Governors of the State Bar has recommended that the respondent, C. F. Gowdy, be disbarred. The conclusions of law and grounds for such recommendation are: (1) That respondent placed himself in position of representing conflicting interests, violating section 8 of Rules of Professional Conduct of the State Bar; and (2) violating rule 11 thereof, prohibiting a lawyer from communicating on the subject of controversy with a party represented by counsel, and negotiating with such party to compromise a suit, and providing that such lawyer must deal with such party's counsel in such matters; (3) violation of his oath of office as a lawyer in failing to disclose to the judge of the court the circumstances of his employment, and that he had previously presented a similar motion to another judge of said court; and (4) violation of rule 5 by attempting to communicate and argue privately with a judge of the court in the absence of other counsel interested, or previously interested, adversely.

The respondent was admitted to the bar in 1915, and, at the time of the transaction herein involved, was practicing law in Tulsa.

In May, 1930, one Marie Baughman employed Messrs. Glasser & Otjen, of Enid, to file suit for her against the Anglo-American Royalties Corporation et al., of which corporation one F. H. McIntire was the managing head. The Enid attorneys employed Messrs. Williams & Davidson as cocounsel at Tulsa. Suit was brought in Tulsa county in pursuance of this employment, and prior to November 12, 1930, some $4,600 in cash had been impounded by garnishment at the instance of plaintiff in that case. McIntire, who was officially connected with the Anglo-American Royalties Corporation, was incarcerated in the Tulsa county jail on charges growing out of his operations in connection with that corporation. McIntire was in jail sometime about November 1, 1930, at which time the respondent, Gowdy, first met him. McIntire consulted with respondent in jail at this first meeting, and respondent knew of his connection with the corporation and of the charges pending against him, one of which was at Enid. After this meeting, and prior to November 12, 1930, respondent accompanied McIntire on several trips in pursuance of his employment by McIntire in connection with his difficulties. One of these trips was to Enid, one to Stillwater, and on these occasions they saw various parties who claimed to be victims of McIntire's fraud. On the Enid trip they met a man by the name of Worden, who was helping McIntire with these same matters.

On or about November 12, 1930, McIntire and Worden came into respondent's office in Tulsa and handed respondent a written dismissal with prejudice of the Tulsa county suit, signed by Marie Baughman, and at the same time delivered to him a letter signed by her, addressed to Messrs. Glasser & Otjen, dismissing them as her attorneys in said case, and also a letter signed by her addressed to respondent, advising respondent that she had delivered to Worden a dismissal of the case, and authorizing respondent to represent her and dismiss the same. Respondent says that he had never seen Marie Baughman at that time, nor had any former correspondence with her. Respondent promptly filed this dismissal in the case, and presented the same to Judge Owen Owen, with the request that he make an order dismissing the case. Judge Owen refused to do this until Messrs. Williams & Davidson, who were local counsel of record, were notified. Respondent communicated Judge Owen's refusal to McIntire and Wor-

den, and to the attorney who was counsel of record in that case for the defendant, and who, himself, had intervened therein, claiming the impounded funds as assignee thereof. On the same day Worden contacted Marie Baughman, and by her authority signed her name to a telegram addressed to respondent authorizing him to dismiss the cause, and a telegram to Messrs. Williams & Davidson notifying them that they were discharged as her attorneys. Respondent communicated his telegram to Messrs. Williams & Davidson, and thereafter made an effort to again see Judge Owen, and not finding him, presented the entire matter to Judge Ladner, another of the judges of said court. Judge Ladner made the order of dismissal. Early the next day Judge Williams protested to Judge Ladner the making of the order, whereupon Judge Ladner, after a conference with several of the attorneys and the respondent concerning the same, vacated his order of dismissal. It appears conceded, however, by the parties that the dismissal operated to divest Marie Baughman of any interest which she might have had in the $4,600 impounded by the garnishment proceedings. It appears that the next day Worden brought Marie Baughman to Tulsa, in his car from her home near Enid, with, according to the testimony, the purpose of refuting certain charges or implications of forgery. Worden, Marie Baughman, and respondent on that day undertook to interview Judge Ladner concerning the matter, out of court. The respondent says that he did not become acquainted with Marie Baughman until the day following the presentation of the dismissal. Respondent testified that he expected no fee from any one for the filing of the dismissal and obtaining the order of the court thereon.

There is no dispute of material facts, and the controversy appears to be upon the construction of the facts as disclosed by the record and the conclusions to be drawn therefrom. We first consider the conclusion that respondent placed himself in position of representing conflicting interests. This conclusion is based upon the assumption that the respondent, in the action taken regarding the dismissal of the pending suit, was in truth and in fact representing McIntire and his interests while purporting to appear for and represent Mrs. Baughman in dismissing her action with prejudice. The respondent maintains that he was in no way connected with any of the defendants in that suit, and therefore did not represent conflicting interests in procuring the dismissal thereof in the capacity of attorney for the plaintiff, Marie Baughman.

According to the respondent's own testimony, the first information that he received that Marie Baughman desired to employ him as her attorney to dismiss the suit, and the first contact which he had with the dismissal, was on the morning of November 12, 1930. This came about in the following manner, according to respondent's testimony:

"A. At that time my office was on the second floor of the Mayo building and Mr. McIntire and Mr. Worden came there to the office and walked in and laid it down on my table without saying a word—just laid it down. Q. Just laid the release down? A. Yes, sir; but it did not have the cover on it."

It appears, further, that the release referred to was accompanied by the following letters:

"To H. O. Glasser and W. J. Otjen,
"Enid, Oklahoma.

"You are hereby notified that I desire to dispense with your services as attorney in the civil case filed by you on my behalf in the district court of Tulsa county, Oklahoma, being case No. 47866, entitled: Marie Baughman v. Anglo-American Royalties Corporation and others, and that your services and that of your cocounsel are dispensed with and that your services as attorneys are no longer desired in said case.

"(Signed)  Marie Baughman."

"Mr. C. F. Gowdy,
"Attorney at Law
"Tulsa, Oklahoma.

"I am herewith giving to W. B. Worden a dismissal of a case pending in Tulsa county and authorize you to represent me and to dismiss said case.

"(Signed)  Marie Baughman."

It appears that he asked few, if any, questions of Worden when he received these papers of him. He promptly called the attorney of record for the defendant in the case and asked him if it would be all right to file the dismissal, in view of the fact that such attorney was an intervener in the case, claiming the impounded funds, and was informed by such attorney that it was all right with him. He thereupon filed the dismissal and proceeded in his efforts to procure certain orders of the court.

At the time McIntire and Worden placed these papers on his desk, the respondent had for the past several weeks been employed by McIntire, and actively engaged with him and Worden in an effort to adjust the difficulties McIntire had fallen into by reason of his ac-

tivities as head of the Anglo-American Royalties Corporation. Marie Baughman was one of the many persons who felt aggrieved by the conduct of the affairs of such corporation, and had then pending a suit in Tulsa county against the corporation seeking some $20,000 relief. She was represented in such suit by reputable attorneys of Enid and Tulsa, and by their diligence she had succeeded in impounding by garnishment some $4,600 cash, deposited to the account of the corporation. Such impounded cash had been assigned to the attorney who represented the corporation, and this cash would apparently be released to such attorney upon dismissal of the suit by the plaintiff. The respondent had full knowledge of all of these facts and conditions.

It occurs to us that, under such circumstances, when McIntire placed these papers on respondent's desk without comment, one of the first questions which would present itself to him would be, Why were Worden and McIntire interested in bringing these papers to me? This question must have entered the respondent's mind at the time. Under the circumstances, he could not fail to know that thereby McIntire sought to further the adjustment of his own difficulties. It is also logical that he would have concluded that McIntire's interest generally in the affairs of the Anglo-American Royalties Corporation would be served by dismissal of the cause. It is scarcely reasonable to assume that he had no curiosity on this score, and he was most certainly informed of the fact that McIntire and the interests he represented would ostensibly be benefited thereby. The dismissal of such cause would clearly be in keeping with the furtherance of McIntire's desire to adjust the various difficulties arising out of the operations of such corporation, and this is the very thing which respondent himself says that McIntire had theretofore employed him to assist in doing.

These letters and the formal dismissal of the cause delivered to the respondent by McIntire and Worden should, in our opinion, cause the respondent to become curious regarding the motive of the plaintiff in dismissing the suit, and what benefit she would obtain from such action. He made no inquiries of her concerning this, nor did he inquire of Worden, who, according to respondent's testimony, purported to be the plaintiff's agent. If respondent considered Worden plaintiff's agent, it was apparent to him that Worden was also working with McIntire and to McIntire's interest. This con-

dition, however, appears not to have excited the respondent's curiosity to the point of making any inquiry from Worden, or of any source, as to whether or not such dismissal would best serve the interests of the person seeking to employ him as her attorney. He made no inquiry of any source, according to his own testimony, of the status of the suit sought to be dismissed, or of the effect of the dismissal so far as plaintiff's interests were concerned. He must have known at the time of the delivery of the papers to him, and certainly knew before he finished his mission, that the dismissal of the cause would result in releasing $4,600 in cash, which would apparently then go to the defendant's attorney, and which she at least might recover in the suit, together with judgment of more than $20,000. The respondent, however, without making the slightest inquiry, without ever having seen his client, without ever having previously known of her existence, upon receipt of these papers from a man known to him to be the head of the defendant corporation and the respondent's own client in the matter of the adjustment of various difficulties growing out of his client's management of and connection with the corporation, accepted the offer of the plaintiff in that suit to have him act as her attorney to dismiss the same with prejudice.

Upon delivery of these papers, the respondent knew, if he did not already know, that Marie Baughman had up to that time, at least, been represented in her suit by attorneys of Enid and Tulsa, and this knowledge should have suggested to respondent that he either discuss the plaintiff's interest in the suit with these former attorneys, or make some inquiry from other sources as to why they were being discharged. His failure to so do, under the circumstances shown here, together with the other facts and conditions which we have noted, point strongly to his knowledge that the plaintiff had been, or may have been, wrongfully influenced to dismiss the cause, and that such dismissal was obtained without her having been fully advised of her legal rights and of the consequences of her act.

Another peculiarity is that nothing was said to respondent about a fee for representing the plaintiff in procuring the dismissal, nor is there any other reason shown for his accepting the employment and spending considerable of his time and efforts to obtain orders of the court in connection therewith. He stated that he expected no fee from her, nor from any per-

son for his services in that particular matter. The record permits of no other reasonable conclusion than that his motive in accepting such employment was in furtherance of his general employment to assist McIntire in straightening out his difficulties and in pursuance of McIntire's desire and design.

The respondent, upon receipt of the papers from Worden, proceeded at once to seek an order from one of the judges of the court dismissing the cause and releasing the impounded funds. The judge refused to make the order unless local counsel of record for plaintiff, Messrs. Davidson and Williams, were notified. Respondent, instead of notifying such counsel, and offering no reason why he should not do so, informed McIntire and Worden of the court's disposition in the matter, whereupon McIntire and Worden left respondent's office to obtain further papers from the plaintiff. On that same afternoon Worden procured plaintiff to transmit a telegram to Messrs. Davidson and Williams dismissing them from the suit, and at the same time a telegram of confirmation to the respondent. The respondent displayed this telegram to Judge Williams of the said law firm without comment, and although contacting one of the lawyers who had represented plaintiff in the suit up to that time, he displayed no curiosity regarding the status of the suit, nor does he offer any explanation why he did not discuss the matter with Judge Williams, particularly in view of the court's apparent desire to know the attitude of the plaintiff's attorneys of record.

Respondent then procured an order of dismissal from another judge of the court, which was set aside on the following day, the 13th, after Judge Williams had protested. The plaintiff was then brought to the respondent's office by McIntire and Worden, when and where the respondent saw her for the first time, and after the preparation of an affidavit for her to sign, designed as a refutation of certain charges and implications of forgery, the respondent, with McIntire, Worden, and plaintiff, then drove to the home of the judge of the court and there endeavored to explain to him that plaintiff in fact desired to dismiss the case; during all of this time the respondent never at any time inquired of

plaintiff her motive for dismissing the case, nor did he make any inquiries to inform himself whether or not the plaintiff understood the consequences of her act. He could not then, nor does he now, assign any reason for her action, or for his activities as her attorney, save her statements that she had procured Worden to attend to her affairs, and that she wanted the case dismissed.

In such circumstances we are of the opinion that the conclusions reached by the Board of Governors of the State Bar, to the effect that the respondent represented conflicting interests in violation of rule 8 of the Rules of Professional Conduct, is fully justified and amply sustained by the evidence. The conclusion is inescapable that respondent deliberately and designedly permitted his client, McIntire, to use him and his high office as an attorney and arm of the court, as the medium through which he procured this elderly woman to relinquish her rights without benefit of untainted legal advice. There is not the slightest evidence in this record to show that the respondent was even curious concerning the interest of his client, Marie Baughman, and such conduct on his part is a clear violation of his oath of office as an attorney, which we find therein in the following words:

"In the office of attorney * * * according to your best learning and discretion * * * with all good fidelity * * * to your client."

We consider it unnecessary to further lengthen this opinion concerning whether or not the respondent is guilty of further infractions of the law and Rules of Professional Conduct. Our conclusion, which we have already announced herein, is sufficient for a disposition of this cause. The gravity of the respondent's offense and the certainty of the proof thereof fully justifies us in approving the recommendation of the Board of Governors of the State Bar that the respondent be disbarred.

It is ordered that the respondent, C. F. Gowdy, be, and he is hereby, disbarred from the practice of law, and that his license to so practice is hereby revoked and recalled.

RILEY, C. J., and OSBORN, BAYLESS, and BUSBY, JJ., concur.